**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Devin J.,[1]

        **Plaintiff,**

v.

**Commissioner of Social
Security,**

        **Defendant.**

**Case No. 2:24-cv-03082**

**Judge Graham**

**Magistrate Judge Litkovitz**

## OPINION & ORDER

Plaintiff Devin J. ("Plaintiff") initiated this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See* Statement of Errors, doc. 9. The Magistrate Judge issued a Report and Recommendation ("R&R") which found Plaintiff's Statement of Errors unpersuasive and recommended that the Commissioner's final decision be affirmed. Doc. 13. Plaintiff's objections to the R&R are now before the Court and ripe for ruling. Doc. 14. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R, in full, and therefore **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[1]

## LEGAL FRAMEWORK & STANDARD OF REVIEW

### *Social Security*

The Magistrate Judge accurately set forth the general standards which guide the benefit determination decisions of the Commissioner:

> To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).
>
> Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:
>
> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

[2]

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.
>
> *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

Doc. 13, # 3405-06.[2]

### *Judicial Review*

Neither party objected to the Magistrate Judge's recitation of the standards which guide judicial review of the Commissioner's determination:

> Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal

---

[2] Page numbers following the "#" symbol refer to the ECF PAGEID numbering system. Page numbers following "Tr." refer to the pagination of the administrative record.

standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

Doc. 13, # 3408-09

[4]

*Objections to a Report and Recommendation*

If a party raises timely objections to the report and recommendation of a magistrate judge, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 904 (E.D. Mich. 2021) "The filing of objections provides the district court with the opportunity… to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 904 (E.D. Mich. 2021) (quoting *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)). Therefore, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## SUMMARY OF ADMINISTRATIVE RECORD

Neither party raises any issues with the Magistrate Judge's recitation of the ALJ's findings of fact and conclusions of law in the R&R:

> The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:
>
> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.

[5]

2. [Plaintiff] has not engaged in substantial gainful activity since April 5, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, April 5, 2015, [plaintiff] has had the following severe impairments: cervical degenerative disc disease; lumbar strain; generalized osteoarthritis (osteoarthritis/enthesopathy right knee, mild right foot osteoarthritis, osteoarthritis bilateral first metatarsophalangeal joint); obesity; depressive disorder, anxiety disorder, and trauma or stressor disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Since April 5, 2015, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that since April 5, 2015, [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except standing is limited to 75% of the day or 6 hours of an 8 hour day; foot control operation with the left is limited to the frequent level; never climb ladders, ropes, scaffolds; occasional for crawling; frequent for climbing ramps or stairs, stooping, kneeling and crouching; no exposure to unprotected heights; goal based production where work is measured by end result, no fast paced work, no strict production quotas; work in a low stress job defined as only occasional changes in the work setting; occasional interaction with the public, coworkers, and supervisors.

6. Since April 5, 2015, [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

[6]

7. Prior to the established disability onset date, [plaintiff] was a younger individual age 18-49 and an individual closely approaching advanced age. Applying the age categories non-mechanically, and considering the additional adversities in this case, on December 31, 2020, [plaintiff]'s age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Prior to December 31, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled" whether or not [plaintiff] has transferable job skills. Beginning on December 31, 2020, [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to December 31, 2020, the date [plaintiff]'s age category changed, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Beginning on December 31, 2020, the date [plaintiff]'s age category changed, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [plaintiff] could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. [Plaintiff] was not disabled prior to December 31, 2020, but became disabled on that date and has continued to be disabled

[7]

> through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Doc. 13, # 3407-08 (footnotes omitted).

## DISCUSSION

Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his analysis of the treating source opinion evidence provided by Dr. Angela Gannon. Doc. 9. Specifically, Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527(c) by assigning Dr. Gannon's opinion "little weight" without articulating good reasons for that conclusion. *Id.* at # 3378-80. The Magistrate Judge found no error. In his objections, Plaintiff largely reiterates the arguments raised in the Statement of Specific Errors for the purposes of *de novo* review. Upon such review, the Court likewise finds no error.

### Treating Source Opinions

The central issue in this matter is the consideration of a treating source opinion in a benefits determination. Neither party objected to the Magistrate Judge's statement of the legal standard guiding consideration of treating source medical opinions:

> For claims filed prior to March 27, 2017, a treating source's medical opinion must be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)

[8]

and *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020). If the ALJ declines to assign a treating source opinion controlling weight, the ALJ must balance the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the treating source. *Wilson*, 378 F.3d at 544; *Hargett*, 964 F.3d at 552 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett*, 964 F.3d at 552 (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ's reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376 (quoting SSR 96-2p, 1996 WL 374188, at *5). This "good reasons rule" helps claimants understand the disposition of their case, especially "where a claimant knows that his physician has deemed him disabled" and "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544. Therefore, "an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552 (citing *Gayheart*, 710 F.3d at 376-77 and quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to dismiss a treating physician's opinion as

[9]

> 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.")).

Doc. 13, # 3410-11 (footnotes omitted).

## Analysis

In her medical source opinion, Dr. Gannon indicated that Plaintiff had "Marked" impairments in his ability to (1) relate to the general public and maintain socially appropriate behavior, (2) respond appropriately to changes in his work setting, and (3) tolerate customary work pressures. Tr. 1858-60. She indicated "Moderate" impairments to other social and behavioral areas, as well as his attention and concentration. *Id.* In all other areas, Dr. Gannon opined that Plaintiff had "Mild" or no impairment. *Id.* She further opined that, "due to the diagnosed conditions and/or side effects of medication," Plaintiff was "likely to have partial or full day unscheduled absences from work occurring 5 or more days per month," thus making him incapable of engaging in work activity on a regular and continuing basis. *Id.*

In assigning "little weight" to Dr. Gannon's opinion, the ALJ articulated five (5) reasons for such a conclusion: (1) Dr. Gannon's opinion was based plaintiff's subjective self-reports; (2) "ample" evidence in the record "strongly suggest[s]" that Plaintiff "overreported or exaggerated symptoms and limitations in connection with mental health conditions"; (3) the evaluations conducted by Dr. Gannon consistently found Plaintiff's mental status to be "normal" and thus "contrary to [the] degree of

[10]

impairment" opined by Dr. Gannon; (4) Dr. Gannon does not cite to any "specific objective evidence" in support of these limitations; and (5) Dr. Gannon's opinion is internally inconsistent. Tr. 1880. The Magistrate Judge found that these reasons were supported by substantial evidence, and the Court agrees.

Plaintiff disputes this conclusion. He argues that both the ALJ and the Magistrate Judge "place to[o] great an emphasis on the theory that Dr. Gannon's opinion was based primarily on [Plaintiff's] subjective complaints," because "by its very nature, mental health treatment is going to be subjective." Doc. 14, # 3423-24. But Plaintiff also asserts that "[j]ust because Dr. Gannon treated [Plaintiff] does not mean that her opinions are based on his statements rather than her expertise as a mental health professional." *Id.* at # 3424. As such, Plaintiff appears to concede that Dr. Gannon's opinion was necessarily based on Plaintiff's self-reports, but instead of addressing the evidence of his overreporting and exaggeration of symptoms, Plaintiff simultaneously suggests that her opinion was actually based on "her expertise as a mental health professional." *Id.* This is either an irreconcilable contradiction or a distinction without a difference. Presumably, Dr. Gannon's "expertise" would be exercised, at least in part, in her interpretation and evaluation of Plaintiff's subjective self-reports.[3] But the ALJ thoroughly explained why he found Plaintiff's subjective self-reports to be unreliable. *See* Tr. 1880.

---

[3] Plaintiff describes the basis of Dr. Gannon's opinion as "her treatment and her treating relationship" with Plaintiff, noting her explanation that Plaintiff "had previously lost jobs due to problems with his mood" and that his "stress levels constricted his ability to function appropriately." Doc. 14, # 3424. These findings clearly derive from Plaintiff's self-reports, not the least because mental status examinations conducted by Dr. Gannon consistently yielded normal results.

[11]

Plaintiff offers minimal argument regarding the evidence which "strongly suggest[s]" that he "overreported or exaggerated symptoms." *Id.* He refers to this evidence as "a single note suggesting that [he] exaggerated his symptoms."[4] Doc. 12, # 3401. And he argues that it should be "rejected in the face of specific functional opined limitations from a claimant's long time treating source medical provider." *Id.* But, as Plaintiff himself concedes, the "specific functional opined limitations" from Dr. Gannon are necessarily based on his self-reports. *Id.* Regardless of whether Plaintiff in fact overreported or exaggerated symptoms, the ALJ sufficiently supported his reasoning in discounting a treating source opinion "based largely on the claimant's self-reported symptoms and limitations." Tr. 1880; *see also Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.")).

The ALJ's 3rd, 4th, and 5th reasons for assigning little weight to Dr. Gannon's opinion are related. The ALJ pointed to the mental status examinations conducted by Dr. Gannon which did not yield results supporting her opinion. As the Magistrate Judge summarized, Dr. Gannon's examinations "consistently found [P]laintiff calm, cooperative, alert, oriented, logical, organized, in no acute distress, with no speech or thought abnormalities, and experiencing no suicidal or homicidal thoughts or plans." Doc. 13, # 3416 (citing Tr. 839, 1232-33, 1282, 1331, 1706). And while Plaintiff contends that his mental health treatment with Dr. Gannon was inherently

---

[4] The ALJ refers to "two invalid profiles and one source specifically noting the questionable validity of [Plaintiff's] self-report." Tr. 1880.

subjective, the ALJ did not err by discounting the opinion based on a lack of "specific objective evidence." Tr. 1880. Notably, Dr. Gannon cited no treatment records at all in support of her medical source opinion. Furthermore, the applicable regulations (i.e., prior to amendments made effective March 26, 2017) state that "objective medical evidence" includes "psychological abnormalities… shown by medically acceptable clinical diagnostic techniques," such as "abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 404.1529; 20 C.F.R. § 404.1528. But, as noted, Dr. Gannon's mental status examinations consistently showed no such abnormalities, including the examination conducted on the same day that she completed the medical source opinion. Tr. 1706-07.

Therefore, the objective medical evidence does not support Dr. Gannon's opinion as to Plaintiff's areas of limitation. But even if it did, the limitations opined by Dr. Gannon do not support her opinion that Plaintiff is incapable of engaging in work activity on a regular and continuing basis. As discussed by the ALJ, Dr. Gannon's opinion indicated "marked limits only in dealing with the public and tolerance to change and customary work pressure." Tr. 1880. However, the ALJ reasonably concluded that these areas of limitation are "adequately accommodated by the mental residual functional capacity, which specifically limits interactions with the public, changes in the work setting, and provides for low stress work." *Id.*

In sum, the Court finds the ALJ's conclusions as to the weight afforded Dr. Gannon's opinion are well-supported by substantial evidence in the record.

[13]

[14]

## CONCLUSION

For the reasons set forth above, the Court finds no error in the ALJ's benefits determination. Therefore, Plaintiff's objections are **OVERRULED**, the Magistrate Judge's R&R is **ADOPTED**, Plaintiff's Statement of Specific Errors is **OVERRULED**, the Commissioner's finding that Plaintiff did not become disabled until December 31, 2020 is **AFFIRMED**, and this case is **DISMISSED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: July 6, 2026

[14]